Appellant may proceed. Good morning, may it please the court. My name is Jacob Bielenberg. I am here on behalf of the appellant, the City of Parkville, Missouri. As this court is aware, this case was tried to the district court on a four day bench trial. At the conclusion of that trial, the district court awarded the appellee, Northland, $473,000 with pre and post judgment interest on count 5 for inverse condemnation and $160,000 with pre and post judgment interest on count 3 for the equal protection claim. Finally, the court also ordered the City of Parkville to issue a certificate of occupancy. The central tenant of appellant's argument here today is that the court's judgment results effectively in unjust enrichment through a double recovery to the appellee. Appellant also submits that the district court erred in its equal protection analysis. Finally, appellant suggests that the court erred in determining Chapter 520 was a nuisance under the inverse condemnation law. Can I ask you about that? I don't think you make this precise argument, but how can a section of the city code be a nuisance? And maybe I'm not understanding the underlying law here, but usually a nuisance is, oh you built like a power line in my backyard, or you know there's a structure that's like taking away my light, or something like that. But I've never ever in all my years of being a judge ever seen someone say that complying with the city code is a nuisance. But I don't understand you to be making that argument. Your Honor, I do make that argument, and in fact that's my main bone of contention with the inverse condemnation claim. And I think where you most commonly see this inverse condemnation scenarios and circumstances like sewage, sewage seepage, right? And I, Judge, I see this as a very simple issue in so much as if chapter 520, the regulation, is the impetus and the cause of the damage, then what you're talking about is a regulatory taking claim. That's what I was, it's not an inverse condemnation claim, right? And so that argument is exactly the one that the City of Parkville is making, and in fact it's the only one it's making with respect to inverse condemnation. I understood you, and maybe you can correct me again if I'm wrong, I understood you as arguing the five elements of nuisance, like assuming that a nuisance existed, but it didn't meet the five elements for a nuisance. Am I misunderstanding that as your primary thrust? Your Honor, that may be six and one and a half dozen in the other, in so much as I think we go through the elements of the nuisance claim simply to establish that the application of chapter 520 in the withholding of the certificate of occupancy isn't a nuisance, right? But I think the fundamental thrust is simply that, right? If it's not a nuisance and you can't find a nuisance, then there's no justifiable reason to enter judgment in that camp, right? And the district court rejected the regulatory taking, right? That's absolutely right. But I want to take the court back to what is, what I see as the key argument for the city here, and that's the double recovery issue. I believe it is pretty well briefed on both sides, but effectively here is where the district court left the parties. It awarded a certificate of occupancy to the appellee here. It awarded the value of the home absent the certificate of occupancy to the appellee here, and then it awarded $160,000 under the equal protection claim to compensate for what I would call incidental damages, loss of reputation, cost of maintaining the property, and things like that. The end result is the court awards the value of a taking, but then reverses the taking and gives a certificate of occupancy, which enabled the plaintiff to then put the house back on the market, sell it for full value. In your view, does the $160,000 then account for the inverse condemnation? In other words, give the certificate of occupancy, sell it for the full value, and then you make up for whatever lost cost or value was taken from them during the course of the, I guess, lack of CO. And, Judge, I think that's probably accurate if you accept that Chapter 520 could constitute a nuisance under the inverse condemnation claim. Assuming that is true, absent arguendo here, I think the proper outcome then would have been you get a certificate of occupancy, you are made whole in terms of the value of the home, then you are awarded damages of $160,000 for reputational harm, cost of maintenance, and the slew of other things that the court then identified in the order. But the 473... So does everyone agree that the 160, that that was how it was calculated? Because I wasn't exactly sure where the numbers came from, but I guess I can't ask you to speak for your colleague here, but was that the understanding? That it was for this kind of either lost opportunity, upkeep, whatever it was that they had to put out as a result of this and we're assuming the nuisance here? Your Honors, the way that I read it, and you're correct that I acknowledge one of taking and then all these other incidental damages, and I think the order itself addresses, well this 473 has been awarded under the inverse condemnation claim, so even though I think those are damages here, I'm going to take that out, leaving the pot of $160,000. So the way I read that is sans the value of the home without the certificate of occupancy, the other pot of damages is effectively that $160,000. Or at least that's what the opinion leaves us to conclude, right? Again, go ahead. Well I was just going to say, you say that, so you argue there's like a double recovery, so what's, what are you asking for here? What's the remedy? If we agree with you, what do we do? Judge, on one end, the remedy I'm asking for is, frankly, I think the city of Parkville is entitled to judgment because I don't believe the court was correct on the inverse condemnation claim. Now if I am wrong on that, then I think the remedy for this court is to leave the certificate of occupancy in place, award the $160,000, and that's that. That's a wrap, right? And the reason for that, Judge, is I've spent some time working it in reverse, right? So okay, we'll give you the $473,000 as the value of the home absent a certificate of occupancy. The implication then, though, is the city of Parkville doesn't have to issue a certificate of occupancy. The reality of this case, however, is the certificate of occupancy has been issued, and my understanding is the home has been sold. So I don't think you can unwind that necessarily. So the only option left is to basically say the court was wrong on the $473,000, award the $160,000, and the certificate of occupancy, and I think that cleans that issue up. But you have to win at least two arguments for that to happen, is my understanding. You have to win on the nuisance claim, and then you also have to win on your double recovery claim, and I think the reason why is because there was almost like a remitter of the equal protection damages. The district court initially said something like the total amount is this amount, $623,000, but then we have to minus out the $473,000, and we're left with $160,000. So you'd have to win at least two of your three arguments in order for that to happen, right? Judge, I acknowledge that that's one way to look at it, certainly. The way that I look at it is sans that quote-unquote remitter issue, the court was in danger of issuing a triple recovery, right? It recognized, hey, I can't double issue the $473,000, but where the court erred is not also doing so, or basically saying you're not entitled to that $473,000 if we issue the certificate of occupancy, right? So do I have to win two issues? Maybe, but I think I do win those two issues, right? The other issue that's kind of dangling out here, your honors, and quite frankly I find it to be an interesting issue, is the equal protection. One of the things that the court did with its judgment, and it acknowledges this in the judgment, is that Northland's theory of itself as a similarly situated party is a novel concept. I haven't been able to find case law on it, and I take the court identifying that as the court couldn't find case law either. The problem with Northland itself being its own similarly situated party, and the judgment is replete with this language, is what you're really doing then is you're comparing parcels of property, right? And you're saying this parcel of property wasn't treated equally with this parcel of property. Now I'm just a Colorado kid, I'm not the smartest person out there, but I will tell you my understanding is the equal protection clause of the United States Constitution applies to human beings. It doesn't apply to parcels of property. Was there enough in the record for Comparador? Was it a Mr. Melton maybe? Was there And I will acknowledge that the district court did reference Mr. Melton in its opinion, while I would also suggest I think it heavily relied on the comparison of the lots. Mr. Melton is fundamentally different, at least from the cities. Before you continue with your answer, so you are saying, do you believe that the district court relied on both the other parcels and Mr. Melton? Or are you saying it was just the other parcels and Mr. Melton was just a comment? And then you can proceed to tell me why you think Melton was or wasn't. Your Honor, I will admit to you that I am or I was a touch confused about the court's order, because it does indeed acknowledge Mr. Melton. But the court found specifically that the lots were similarly situated and acknowledged that this is a novel situation. So I think you can infer the court didn't necessarily rely on Mr. Melton. Now, could Mr. Melton standing alone suffice as a similarly situated party? I suppose that it could, but then you'd need to go down the analysis of what is similar and what is dissimilar between Mr. Melton and Northland's efforts here. And humbly, I would suggest that Mr. Melton, one, when he did his efforts with the swale, sought permission from, I believe it is the developer and not the city here. But the fundamental issue is Mr. Melton put a over the flowing water. At no point did he impede the flow of that water. And that's what's effectively the main contention of the city of Parkville here. It's not that you grade into the swale or whatever. It's diverting the flow of that water and shifting the burden as to whom carries that water. And I'd submit the court here that Mr. Melton is fundamentally different than Northland is in that circumstance. With that, I see that I've got two minutes left. I'd reserve that for rebuttal. Thank you very much. Can I also have a question? Yes. Have the parties worked out this motion to strike? Your Honor, and... Let's stop this time there. I'm glad you bring this up. One of the reasons that I filed that as a stand alone is our deputy here graciously called me and said, you're going to have some issues here. I didn't want to refile the brief. My position on that is very simple. If it wasn't before the trial court, it shouldn't be argued here. If it was, then it's all fair game. And that's really the settlement of the argument. I don't believe all of that was in in front of the trial court. But if I'm wrong on that, I don't think it changes much of the arguments either way. And I'm not going to make a huge bone of contention about it. What does that mean? What you're asking me is... Well, I concede that... You either are asking it for it to be stricken or you're not. Your Honor, I think we're asking the court to strike it. That's what I'm asking is... Yeah, I don't think it was fairly in front of the trial court and this court should strike it. Is it going to make a difference? No. I don't think it does. Thank you. Good morning, Your Honor, or judges. You're about to see. May it please the court. I'm Jacob Doshall. I represented Northland Construction Management at the trial of this matter. And this case is not about complex legal theories. It's about a city that used its regulatory power to hold a certificate of occupancy hostage for three years to appease politically connected individuals. The district court, after a four-day bench trial, found as a refusal to issue the CO was unreasonable, pretextual, and legally baseless. The facts supporting those findings were established by a preponderance of the evidence. Those findings under Federal Rule 52 are not only presumptively correct, but under the law, virtually unassailable. And I think I want to be clear about one thing. The city should have never withheld the certificate of occupancy. That house, from day one in December of 2022, complied with all codes and ordinances. What the city did was then apply an ordinance as leverage to force my client to do something he was not obligated to do. The city issued a building permit that had no special requirements. If the city wanted my client to install a culvert pipe or maintain water from an entire 18-acre watershed on his property, they could have put it in the building permit. The grading that was done on Lot 9 complied almost exactly with the approved grading plan approved by the city in 2015. There was no easement for stormwater on the property. And in effect, when my client was issued that building permit, he had the ability to grade the property as he sees fit, so long as it complies with all the codes and ordinances. It is an unassailable fact that that property and the grading on that property complied with all those ordinances. Now we talk about nuisance, and you raised a very good question. How could the city's application of an ordinance be unassailable? Really what this is is their attempt to argue a fact issue. The fact is, my client got notice when they rejected his certificate of occupancy that the only issue was Chapter 520. That was the sole basis of the city's authority. My client notified the city, this ordinance does not apply to us, and looking at the plain language of that ordinance, the court agreed. So they had noticed that their actions were unreasonable very early in this case, before any lawsuits were filed, and maintained that they had the authority to force my client to do something that he wasn't obligated to do. But that's not a nuisance. A nuisance would be if they came in, they built the darn thing, the structure, and then water started flowing onto the property. That would have been a nuisance, or at least it would have been a colorable nuisance. I just, is there any case that says that the application of an ordinance in the state courts can constitute a nuisance? Because I just, it seems like a square peg round hole. Yeah, and I understand that. But I think it's also a distinction without a difference. Because this court in Northland v. City of Parkville determined that it was. And because they had notice of it beforehand. However, Missouri courts have expanded the definition of inverse condemnation. It doesn't necessarily only require the showing of a nuisance. And I point to County of Scotland v. Missouri Public Entity Risk Management Fund, 537 Southwest 3rd, 358, where the restricting property rights, it can constitute inverse condemnation. So even if what he says is true, and an ordinance or an application of an ordinance, an unreasonable and unlawful application of an ordinance cannot possibly constitute a nuisance, which Judge Wyman specifically found, it doesn't matter. Because what we see here is a government regulation that has gone too far to deprive my client of a valuable property right. But wouldn't it be an inconsistent verdict? I actually think this fits better. And maybe I'm off base as a regulatory taking. It's a regulation that's being applied that takes the property because it becomes unsellable. And that's also, at least in Minnesota where I was, that's a regulatory taking. And it's inverse condemnation. It's just not a nuisance. Missouri courts follow the federal guidelines for regulatory taking. Those two causes of action under Missouri law are essentially the same. Okay. Does that help your case? Or does that, same as nuisance or same as inverse condemnation? Inverse condemnation. Doesn't that hurt your case though because the district court rejected the regulatory taking? But they allowed, the claims were duplicative. The inverse condemnation was an alternate claim, an alternative claim. And we were allowed to proceed on that. And under the elements, we proved all of those elements by preponderance of the evidence. I'm going to talk about double recovery. Really what they're talking about is an offset defense, which they didn't plead as an affirmative defense in their pleadings at all. Okay. We've got two types of damage. Compensatory damages. That compensates my client for the three years that he had to maintain this property. Empty. There's no way he could use it for any purpose. And how was that calculated? Like give me some of the factors I'm assuming that would have gone into what's my damage for that inability to sell it without that certificate of occupancy. Well, there was mortgage payments on the construction loan. There was interest. There was taxes, insurance, costs to maintain the property. Okay. All right. So that's a freestanding bucket of damage. Yeah. In fact, they didn't present any evidence on damages. We presented a realtor, a real estate appraiser with 40 years of experience. We presented an economist. But wouldn't that be the value of the loss of an inverse condemnation? And then the certificate of occupancy gives you the full value of the property to sell?  And the full certificate of occupancy laden value? Yeah. The grant of the CO cuts off prospective damages. The awards that we received for equal protection and inverse condemnation compensate my client for the damages that he sustained up until that point when we received the CO. The damages exceeded the amount of the award by a tremendous amount. There was over a million dollars in damages that we put on evidence of. And if you look at the judge's order, under the equal protection award, the judge said that we proved that we had $633,000 in damages. And that was offset by $473,000 and $473,000 to prevent double dipping. If this court decided that my client would only be entitled to $160,000, there would be a tremendous loss. Where could we find that list of all of the damages and the amounts that were presented that you say was over a million? Is that right? Judge, I don't know if the court put it in order, but they may have. How about in the record? Because I wasn't quite sure how these numbers were  Sure. Dr. Joseph Haslag is an economist at the University of Missouri and the Court of Appraisal. And the court correctly relied on Metro-St. Louis versus Zycam, where it's been held in Missouri law that a court can award both specific performance and damages. To be clear, there was no double recovery in this case. The amount of the judgment, the monetary judgment, that was awarded compensates my client for the damages that he incurred from December of 2022 to when the CO was issued, I think May of 2025. And did your damages expert include lost profit? Because it seems like that would be included in what you get once you get to sell it with the certificate. We put on evidence of lost business opportunity, Your Honor. Because of the lending arrangement with a particular bank, my client could build two less houses per year. We didn't get a judgment for those damages. We did not get an award for lost profits. The $633,000 under equal protection was reduced to $160,000. If you take away the $473,000 award, arguably that judgment or that award for equal protection should be reinstated. Some of the time I have left, I want to talk... You said your client had damages of well over $1 million. Was that construction? Is that like payments to contractors for dirt work and these things that were done during this time period? I believe, Your Honor, that... Because I don't think I didn't see the district court talking about any of that. I'm looking at how the court came up with these two scenarios, Scenario A and B. And under Scenario A, there was lost value equal to $473,000. The $633,000 award, and I think that's where we would unpack those damages, I think the damages that we put on at trial included his investment costs in the property, what it cost for him to build the house. It also included all of the other things we talked about earlier, the cost to maintain the property, the cost to maintain the note, insurance and taxes, and all of those different things. Nevertheless, you don't have a cross appeal and you're not attacking the district court's analysis in any way. I want to talk about comparators for a moment. The appellant is trying to make the argument that we are only comparing Lot 9 and Northland's rights on Lot 9 to the other lots. That's not the case at all. It is significant that a neighbor was allowed to grade into the swale, to make alterations to the swale and build a bridge over the swale without any interference from the city. It's significant because that neighbor is on the Board of Aldermen. There was no action at all taken against this particular Board of Aldermen member. When he took those actions, or whoever took those actions, we know that he did seek permission from the developer to make alterations to the swale. The city should be charged with knowledge of that because it was done by a member of the Board of Aldermen. The developer also made alterations to the swale. The developer would routinely come in and dump riprap on the property. My client noticed that and in December of 2020 mentioned it to the city's engineer. The city's engineer at that time told my client to mind his own business. Don't worry about what the developer does. You fix your lot. Other builders in Parkville were never subjected to a requirement that they obtain a Chapter 520 permit. My client did a sunshine request and for a period of 10 years, no residential builder was ever required to obtain a 520 grading permit. The former and current public works directors both admitted that no builder had ever been required to do what my client was being required to do. There was no rational basis for the city's action. The city's action served no legitimate government purpose. I think it's notable that because the city could not apply Chapter 520 to my client, what they were essentially forcing him to do was conform to an unwritten, self-determined requirement that didn't exist under the city codes. And that could never form a legitimate public purpose. And I see that I'm out of time. If there's no more questions, I appreciate this panel today and ask the court to uphold the judgment. Counsel, very briefly, what's your response to this motion to strike? All of the documents that we submitted in our appendix were part of the court's record. All of the video clips that were played were played at trial. Moreover, we did deposition designations that matched the videos that were played at trial. Those were all delivered to the court by hand. There is not any evidence that's submitted with our brief that wasn't before the court. Thank you, Your Honor. And I will be very brief here. I know we're the last one here today. I would like to reiterate I agree this case is likely better suited as a regulatory taking. And I think, Your Honors, respectfully, that the record shows plaintiff theoretically agrees with that notion as well, which is evidenced by the fact that plaintiff never even briefed inverse condemnation in his findings of fact and conclusions of law. They argued regulatory taking and rested on that argument. I think that's indicative of the idea that they also believe this is a regulatory taking. Your Honors, my final point is inverse condemnation is a form of taking. If there has been no taking, what is there to compensate? And with that, I thank you for your time, unless there are further questions. Thank you. Thank you, counsel. Appreciate your arguments today. And the case is submitted. Court will render a decision in due course.